Taras Kick (SBN 143379)
John E. Stobart (SBN 248741)
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@Kicklawfirm.com
Stobart@Kicklawfirm.com

Jeff Ostrow (pro hac vice to be filed)
Jonathan M. Streisfeld (pro hac vice to be filed)
Rachel Glaser (SBN 337377)
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd. Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Plaintiff and Proposed Classes*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ROY SALCEDO, on behalf of himself
and all others similarly situated,

                Plaintiff,

    vs.

AXOS BANK,

                Defendant.

**CLASS ACTION COMPLAINT**

CASE NO.  '21 CV 1651 AJB KSC

**CLASS ACTION COMPLAINT**

Plaintiff Roy Salcedo ("Plaintiff"), individually and on behalf of all persons similarly situated, for complaint against Defendant Axos Bank ("Axos"), alleges as follows:

**INTRODUCTION**

1.   All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or his counsel. Allegations pertaining to Plaintiff, or his counsel are based upon, inter alia, Plaintiff's or his counsel's personal knowledge, as well as Plaintiff's or his counsel's own investigation. Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for additional investigation or discovery.

2.   Axos misleadingly and deceptively misrepresents the fee practices challenged herein in its publicly-available marketing materials, including its own account contracts. Axos also omits material facts pertaining to each of those practices in its publicly-available marketing materials, including its account contracts.

3.   Research shows that fees are the most important factor influencing consumers' selection of a new banking provider. See Ron Shevlin, "How Consumers Choose a Bank: A Tale of Two Surveys." Insight Vault, Cornerstone Advisors, 23 Aug. 2018, https://www.crnrstone.com/insightvault/2018/08/23/how-consumers-choose-a-bank-a-tale-of-two-surveys/ (summarizing two consumer surveys that revealed that the most important factor influencing consumers' selection of a new banking provider is the amount of fees charged).

4.   Axos customers have been injured by Axos' improper practices to the tune of millions of dollars bilked from their accounts in clear violation of their agreements with Axos.

5.   To this day, Axos continues to deceive the general public regarding its fee practices challenged herein. Axos's account contracts and marketing materials are publicly available online and in Axos branches to all current and prospective

accountholders. The general public relies on representations in these documents to make important financial decisions regarding which financial institution they would open a checking account with. These unsuspecting consumers would have no way of knowing about the fee practices challenged herein that Axos assesses on its customers prior to establishing a banking relationship with Axos. Consumers who have already opened Axos accounts also rely on the misrepresentations and omissions in the publicly-available account documents when making every day financial transactions.

6.     The Pew Charitable Trusts has emphasized the importance of transparent checking account fee disclosures for both comparison shopping for checking accounts and for effective fee avoidance:

> Bank accounts are an essential financial product, used by 9 in 10 American households, and need to be safe and transparent. Account agreements and fee schedules provide customers with account costs, terms, and conditions. Among the largest U.S. banks, however, the median length of checking account disclosure documents is 40 pages, and the information is presented in varied formats with inconsistent wording, making it difficult for consumers to easily find the information they need to comparison shop, avoid overdraft and other fees, and manage their money.

The Pew Trusts, "The Benefits of Uniform Checking Account Disclosures."

7.     Members of the public considering opening a checking account have the right to accurate information regarding the checking accounts they are considering. Reasonable consumers would not agree to open Axos checking accounts if they were informed, for example, that they could be assessed the account fees challenged herein.

8.     On behalf of himself and the Classes (defined below), Plaintiff seeks damages, restitution, and injunctive relief on behalf of the general public for Axos's breach of contract and the covenant of good faith and fair dealing and violations of California's consumer protection laws.

9.     Axos wrongfully charged Plaintiff and the class members fees related to their checking accounts due to Axos's policy and practice of maximizing the account fees it imposes on customers. The conduct has the overwhelming common denominator of breaching its customers' contracts and violating laws so as to maximize Axos's fee

income at the expense of its customers. Specifically, Axos assesses an overdraft fee ("OD Fee") on debit card transactions when by Axos's own calculations there was enough available money in the checking account to cover the transaction at issue when authorized and the money was specifically held for that transaction but was assessed an OD Fee anyway.

10. Additionally, Axos unlawfully assesses two or more fees ("Multiple Fees"), including OD Fees and non-sufficient funds fees ("NSF Fees"), on a single Automated Clearing House ("ACH") transaction or check. In Axos's sole and undisclosed view, each time Axos processes an ACH transaction or check for payment after having been rejected for insufficient funds, it becomes a new, unique item or transaction that is subject to another fee. But Axos's contract never even hints that this counterintuitive result could be possible.

11. The charging of such OD Fees and NSF Fees breaches Axos contracts with its customers, which includes Plaintiff and the members of the Classes.

12. Though it first opened for business in 2000 and touts itself as leading the way in digital banking, Axos implemented OD Fee and NSF Fee policies that are no different than other financial institutions have used to generate billions in accounts fees to maximize profits.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Axos is subject to personal jurisdiction here and regularly conducts business in the Southern District of California, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**PARTIES**

15.     Plaintiff is a citizen of the State of Iowa.  At all times relevant, Plaintiff was a customer and accountholder at Axos.

16.     Axos is primarily a national online bank with its headquarters and principal place of business located in San Diego, California.  It has brick and mortar branches in California, Nevada, and Ohio. Among other things, Axos is engaged in the business of providing retail banking services, including Plaintiff and members of the putative classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. Axos conducts business, throughout the State of California and the United States.

**FACTUAL BACKGROUND**

**A.     Axos Assesses OD Fees on Accounts That Were Not Actually Overdrawn**

17.     Axos offers checking account services. One of the features of a Axos checking account is a debit card, which can be used for a variety of transactions including the purchasing of goods and services. In addition to receiving a debit card, other features of a Axos checking account include the ability to write checks; withdraw money from ATMs; schedule Automated Clearing House (ACH) transactions (certain recurring payments); and other types of transactions that debit from a checking account.

18.     In connection with its processing of debit transactions (debit card, ATM, check, ACH, and other similar transactions), Axos assesses OD Fees to customer accounts when it claims to have determined that a customer's account has been overdrawn. As alleged further below, these fees were not at all permitted to be charged by any Axos contract during the class period and as such breached the contracts and the implied covenant of good faith and fair dealing.

19.     OD Fees constitute the primary fee generators for banks and credit unions. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from OD Fees.

20.     Since 2000, the average dollar amount of a checking account transaction

has become much lower because customers, and especially younger customers, use debit cards instead of cash or credit cards for everyday purchases. In 2016, the number of terminals that accept debit cards in the United States had increased by approximately 1.4 million compared to 2011.[1] That has translated to the average dollar amount of overdraft transactions being lower than in 2000. However, while the average overdraft transaction is substantially lower and provides much less risk and exposure to the bank, the average cost of OD Fees per transaction has gone up.

21.     The high cost of an OD Fee is usually unfairly punitive.  In a 2012 study, more than 90% of customers who were assessed OD Fees overdrew their account by mistake.  (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", at p. 4). More than 60% of the transactions that resulted in a large OD Fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p. 8). More than 50% of those who were assessed OD Fees do not recall opting into an overdraft program (*Id*. at p. 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*Id*. at p. 10).

22.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed OD Fees. (*Id*. at p. 1). A 25-year-old is 133% more likely to pay an overdraft penalty fee than a 65-year-old. (*Id*. at p. 3). More than 50% of the customers assessed OD Fees earned under $40,000 per year. (*Id*. at p. 4). Non-whites are 83% more likely to pay an OD Fee than whites. (*Id*. at p. 3).

23.     As a result of banks and credit unions taking advantage of millions of customers through the unfair practice of charging OD Fees through methodologies that

---

[1] Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases,* MarketWatch, Mar. 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23 (last visited Sept. 17, 2021).

CLASS ACTION COMPLAINT

maximize the possible number of expensive OD Fees to be charged, there has been a substantial amount of litigation for more than a decade. The rulings of these cases have predominantly fallen in favor of consumers, forcing the banks and credit unions to repay their customers significant amounts of wrongfully collected OD Fees.

24.    An accounting gimmick used by some financial institutions, which on information and belief financial institutions including Axos may use, is an "authorize positive – purportedly settle negative" ("APPSN") method of calculation. It works as follows. At the moment debit card transactions are swiped and authorized on an account with positive funds to cover the transaction, Axos immediately reduces customers' checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the customer's displayed "available balance" reflects that subtracted amount.  As a result, customers' accounts will always have sufficient available funds available to cover these transactions.

25.    However, Axos still assesses $25 OD Fees on these transactions and misrepresents its practices in its Account Agreement. Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Axos later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of transactions are "APPSN Transactions."

26.    Axos maintains a running account balance in real time, tracking funds consumers have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Axos subtracts the dollar amount of the transaction from the customer's available balance and places such funds on a hold. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given authorized debit card transaction.

27.    That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already

1   been reduced to account for any earlier debit card transactions. Accordingly, many

2   subsequent transactions incur OD Fees due to the unavailability of the funds

3   sequestered for those debit card transactions.

4       28.    Still, despite keeping those held funds off-limits for other transactions,

5   Axos improperly charges OD Fees on those APPSN Transactions, although the APPSN

6   Transactions *always* have sufficient available funds to be covered.

7       29.    The Consumer Financial Protection Bureau in its Consumer Financial

8   Protection Bureau, Winter 2015 "Supervisory Highlights" has expressed concern with

9   this very issue, calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged.  Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions.  Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status.  But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures.  Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive.  Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

    30.    There is no justification for these practices, other than to maximize Axos's

OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. Axos is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But Axos was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

31.     Besides being deceptive, unfair, and unconscionable, these practices breach contract promises made in Axos's adhesion contracts—contracts which fundamentally misconstrue and mislead consumers about the true nature of Axos's processes and practices. These practices also exploit contractual discretion to gouge consumers in violation of the implied covenant of good faith and fair dealing. In short, Axos is not authorized by contract to charge OD Fees on APPSN Transactions, but it has done so.

### i.     Mechanics of a Debit Card Transaction

32.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Axos. When a merchant physically or virtually "swipes" a customer's debit card, the card terminal connects, via an intermediary, to Axos, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

33.     At this step, if the transaction is approved, Axos immediately reduces the funds in a customer's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

34.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations: "When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is

1   presented for settlement. This is commonly referred to as a 'debit hold.' During the
2   time the debit hold remains in place, which may be up to three days after authorization,
3   those funds may be unavailable for the consumer's use for other transactions." Federal
4   Reserve Board, Office of Thrift Supervision, and National Credit Union
5   Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 25, 2009).

6       35.   Sometime thereafter, the funds are actually transferred from the
7   customer's account to the merchant's account. Axos decides whether to "pay" debit
8   card transactions at authorization. If it decides to pay, after that, Axos is obligated to
9   pay the transaction no matter what. For debit card transactions, that moment of decision
10  can only occur at the point of sale, at the instant the transaction is authorized or
11  declined. It is at that point—and only that point—when Axos may choose to either pay
12  the transaction or decline it. When the time comes to actually settle the transaction, it
13  is too late—the bank has no discretion and must pay the charge. This "must pay" rule
14  applies industry wide and requires that, once a financial institution authorizes a debit
15  card transaction, it "must pay" it when the merchant later makes a demand, regardless
16  of other account activity. See Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046
17  (Nov. 17, 2009). Notably, there is no change—***no impact whatsoever***—to the available
18  funds in an account when this step occurs.

19      **ii.    Axos's Account Agreement**

20      36.   Plaintiff has an Axos checking account, which during the class period was
21  covered by the Personal Deposit Account Agreement and Schedule of Fees ("Account
22  Agreement"), attached as *Exhibit A*. The Account Agreement, a contract of adhesion
23  that applies to all Axos checking accountholders, does not allow Axos to charge OD
24  Fees for transactions submitted to APPSN calculations.

25      37.   The Account Agreement states that transactions are only overdraft
26  transactions when they are authorized into a negative account balance. Thus, for
27  APPSN Transactions, which are immediately deducted from a positive account balance
28  and held aside for payment of that same transaction, there are always funds to cover

those transactions—those that were held aside and sequestered at the time of authorization. Yet Axos assesses OD Fees on them anyway.

38.     In fact, Axos actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses the secret posting process alleged herein. Axos assesses OD Fees even when sufficient funds exist to cover transactions that are "authorized and paid" into a positive balance.  No express language in any document states that Axos may impose OD Fees on any APPSN Transactions.

39.     The Account Agreement misconstrues Axos's true debit card processing and overdraft practices. First, and most fundamentally, Axos charges OD Fees on debit card transactions for which there are sufficient funds available to use to cover the transactions.

40.     Axos assesses OD Fees on APPSN Transactions that *do* have sufficient funds available to cover them throughout their lifecycle. Axos's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Axos's actual practice and the contract causes consumers like Plaintiff to incur more OD Fees than they should.

41.     Sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice. These withdrawals take place upon initiation and thus they cannot be re-debited later. But that is what Axos does when it re-debits the account during a secret batching posting process.

42.     In reality, Axos's actual practice is to attempt the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement. At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into available funds. As such, Axos cannot then charge an OD Fee on such a transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

43.     Something more is going on: at the moment a debit card transaction is getting ready to settle, Axos does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Axos releases the hold placed on funds for the transaction for a split second, putting money back into the account, and then re-debits the same transaction a second time.

44.     This secret step allows it to charge OD Fees on transactions that never should have been subject to them—debit card transactions that were authorized into sufficient funds, and for which Axos specifically set aside money to pay them. This discrepancy between Axos's actual practices and the contract causes accountholders to incur more OD Fees than they should. In sum, there is a huge gap between Axos's practices as described in the Account Agreement and Axos's practices in reality.

45.     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions. That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions). If funds are immediately debited, they are necessarily applied to the debit card transactions for which they are debited.

46.     Axos was and is aware that this is precisely how its customers reasonably understand debit card transactions to work. Axos knows that many consumers prefer debit cards for these very reasons. Consumer research indicates that consumers prefer debit cards as a budgeting device because they do not allow debt like credit cards do.

47.     On information and belief, although access to Axos's database will be sought by Plaintiff to confirm, Plaintiff was charged such inappropriate OD Fees due to the APPSN calculation.

48.     For example, on May 1, 2019, Plaintiff was charged a $25 OD Fee, what Axos calls a "NSF Item Fee," for a point-of-sale debit card transaction that was authorized prior to this day on a sufficient available balance.

49.     Axos had no authority to use an APPSN calculation to assess OD Fees in

its Account Agreement with its customers during the class period, and such practices breach its contracts with its customers. These practices exploit any contractual discretion Axos may have in its contracts with its customers in an unreasonable way that adds to Axos's profits and harms its customers. Axos does not describe this APPSN procedure in its contracts. Instead, the Account Agreement describes those funds in the available balance for authorized debits will be held and sequestered until posting, and that subsequent debits will not be authorized on those sequestered funds:

> **Available Balance**
> *Available Balance is the amount of funds available for withdrawal and authorizing transactions.* Your Available Balance may be different than your ledger Balance or Collected Balance. *The Available Balance is reduced by 1) the amount of pending transactions, such as a point-of-sale transaction; 2) funds on hold in accordance with our funds availability policy;* 3) our receipt of notice that a transaction will be presented or returned; 4) our receipt of legal process relating to your account; or 5) your use of your account as a security for a loan.

Ex. A at 8 (emphasis added).

50.     When Axos authorizes debit card transactions on positive available funds and places a hold for the amount of the transaction, not allowing it to be used for anything else, it then violates the Account Agreement terms when it later charges OD Fees on such debit card transactions.

51.     The Account Agreement further states as to OD Fees:

> **Overdrafts and Nonsufficient Funds**
> When we determine that you do not have enough available funds in your account to cover an Item (including an ATM or Debit Card transaction), then we consider the Item an insufficient funds item. If you have enrolled in our optional Overdraft Line of Credit Program and have enough funds in the linked account under the Overdraft Line plan, we transfer funds to cover the item. You may also establish a link from your checking account to a savings account or money market account to cover the shortfall in your checking account. *Otherwise, without notice to you, we either authorize or pay the insufficient item and overdraw your account (an overdraft item) or we decline or return the insufficient item without payment (a returned item).* All types of Items, including Bank fees, may overdraw your account.
>
> *We pay overdrafts at our discretion*, which means we do not guarantee that we will always, or ever, authorize and pay them. If we *authorize or pay an item and create an overdraft*, you must pay back any overdraft immediately. Each Owner will be jointly and severally liable to pay back any overdraft created by any account Owner, even if the Owner

did not write the check, initiate the transaction, benefit from it or make any deposits to the account. If we overdraw your account to pay items on one or more occasions, we are not obligated to continue to paying future insufficient funds items. We may also close your account due to overdraft activity. See Closing an Account. You agree that we may apply deposits (including, but not limited to, Social Security and similar benefits) to overdrafts without notice to or consent from you, unless the law states otherwise.

Ex. A at 24 (emphasis added).

52.     The EFT Agreement, a disclosure that is part of the Account Agreement, further supports Axos's promise not to charge OD Fees on APPSN Transactions, stating:

**Preauthorization Payments Holds**
When you use your Card at a point of sale location or when you use the Visa or other network enhancement feature of the Cards to obtain goods or services or to obtain cash, the merchant may attempt to obtain preauthorization from us for the transaction. *When the preauthorization is approved by us, we immediately debit the preauthorized amount from your designated Account.* The amount you actually approved or signed for may vary in some cases from the amount of the actual purchase, depending on the merchant's request. If the preauthorization request varies from the amount of the actual transaction, payment of the transaction (which usually occurs within two to five days) will adjust the amount previously deducted from your designated Account. This process may affect the availability of funds from your designated Account to pay checks or for other electronic fund transfers. Since all transactions are immediately posted to your designated Account, please check your current balance on the Website. We will not be responsible for damages for wrongful dishonor if any items are not paid because the amount requested by the merchant was different from the actual amount you approved.

Ex. A at 27 (emphasis added).

53.     When Axos pays overdrafts, including ones that are APPSN Transactions, it charges a $25 OD Fee as specified in the Fee Schedule:

Non-sufficient/uncollected funds- Paid or Returned Item
(includes checks, ACH and bill payments), per item             $25.00

Ex. A at 35.

54.     Given the settlement (a/k/a posting) process for APPSN Transactions and the fact that a fee in such circumstances is counterintuitive to accountholders, some financial institutions other than Axos that charge OD Fees on APPSN Transactions

expressly represent in the contract that those transactions can incur OD Fees as well as explain and show examples of how such fees occur.

55.    For example, Bank of America's deposit agreement states:

Debit card transactions and related authorization holds may impact your available balance. It is important to know that your available funds may change between the time you authorize a transaction and when the transaction is paid. . . . **The amount being held is not applied to the debit card transaction. . . . If other account activity has caused the funds available in your account to drop below zero before the debit card transaction is paid, you may no longer have sufficient funds to pay the merchant. . . .**

Here is an example of how that may happen: On Monday we authorize a debit card transaction because you have enough available funds at the time. A hold is then placed on your funds until the merchant presents the transaction for payment. On Tuesday we process and post another transaction (such as a check you wrote) that reduces your available funds below zero. If the merchant presents the original debit card transaction for payment on Wednesday, and your available funds are now below the amount needed to pay the transactions, the debit card transaction will overdraw your account and you may incur an overdraft fee.

https://bit.ly/3g6IyEW (emphasis added) (last visited Sept. 20, 2021).

56.    As another example, Canvas Credit Union states:

Available balance **at the time transactions are posted (not when they are authorized)** may be used to determine when your account is overdrawn. The following example illustrates how this works:

Assume your actual and available balance are both $100, and you swipe your debit card at a restaurant for $60. As a result, your available balance will be reduced by $60 so your available balance is only $40. Your actual balance is still $100. Before the restaurant charge is sent to us for posting, a check that you wrote for $50 clears. Because you have only $40 available. . . . your account will be overdrawn by $10, even though your actual balance was $100 before the check posted. . . Also, when the $60 restaurant charge is presented to the Canvas and posted to your account, you will not have enough money in your available balance because of the intervening check, and you will be charged a fee for that transaction as well, even though your available balance was positive when it was authorized.

https://bit.ly/2FoxAOv (emphases in original) (last visited Sept. 20, 2021).

57.    Capital One's deposit agreement similarly states:

Other intervening transactions that occur while authorized debit card transactions are pending may create overdrafts on your account. Here is an example of how that could happen:

You're enrolled in our optional overdraft service. Your account balance is $100.00. On Monday, you go to the store and use your debit card to make a purchase for $80.00. We authorize the transaction; however, the merchant doesn't send us the transaction for payment and posting to your account on that day. On Tuesday, you withdraw $30.00 from an ATM, reducing your account balance to $70. **On Wednesday, the merchant requests payment for the $80.00 transaction authorized on Monday, and you're charged a fee because the balance in your account is insufficient to pay the transaction at that time**.

https://capital.one/312vrjW (emphasis added) (last visited Sept. 20, 2021).

58.    Axos provided no such disclosure at the time of the operative transactions, and in so doing, promised not to charge OD Fees on APPSN Transactions and otherwise misrepresented its true practices to its accountholders.

59.    Plaintiff and the class members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.  Plaintiff did not and could not have, exercising reasonable diligence, discovered both that he had been injured and the actual cause of that injury until he met with his attorneys in or about 2021. While Plaintiff understands that he was assessed fees, he did not understand the cause of those fees until then, because Axos hid its actual practice from its customers by describing a different practice in its contracts.

60.    Plaintiff and the class members were harmed by these practices when they were assessed such fees when they should not have been.  A complete evaluation of Axos's records is necessary to determine the full extent of Plaintiff's harms from these practices.

**B.    Axos Charges Multiple Fees on the Same Item**

61.    As alleged more fully herein, the second unlawful fee assessment practice that Axos has for years implement is the charging of Multiple Fees.

62.    Axos Account Agreement allow it to take certain steps when an accountholder attempts a transaction but does not have sufficient funds to cover it. Specifically, Axos may: (a) authorize the transaction and charge a single OD Fee; or (b) reject the transaction and charge a single NSF Fee.

63.    In contrast to its Account Agreement, however, Axos regularly assesses

Multiple Fees on the same item or transaction.

64.    This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed.  Instead, Chase charges one fee, even if a transaction is reprocessed for payment multiple times.

65.    Axos never disclosed this practice. To the contrary, Axos indicated it will only charge a single fee on an item or per transaction.

### i.    Plaintiff's Experience

66.    As an example, on February 1, 2019, Plaintiff attempted to make a payment to LOAN REPAR TIAA, via ACH transaction.

67.    Axos rejected payment of that item due to insufficient funds and charged Plaintiff a $25 NSF Fee.

68.    Unbeknownst to Plaintiff and without his request to Axos to retry the transaction, six days later, on February 7, 2019, Axos processed the same item again, and again rejected the item and again charged Plaintiff a $25.00 NSF Fee.

69.    In sum, Axos charged Plaintiff $50.00 in fees to process a single payment.

70.    Plaintiff understood the above transactions to each be a single transaction, an understanding consistent with what is laid out in Axos's Account Agreement, capable at most of receiving a single NSF Fee (if Axos returned it) or single OD Fee (if Axos paid it).

### ii.    The Imposition of Multiple Fees on a Single Transaction Violates Axos's Express Promises and Representations

71.    Again, the Account Agreement provide the general terms of Plaintiff's and the class members' relationship with Axos and makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

72.    The Account Agreement contained explicit terms indicating that OD Fees

and NSF Fees will only be assessed once per item, when in fact Axos regularly charges

Multiple Fees per item even though a customer only requested the payment or transfer

once:

> **Overdrafts**
> If any Item or other debit presented to us will overdraw the available account balance, including any balance in an overdraft protection account ("ODP Account") we have established for you, *we will charge you a fee, whether we pay the Item or dishonor it.*

Ex. A at p.10 (emphasis added).

73.    The Account Agreement additionally promises:

> When we determine that you do not have enough available funds in your account to cover an Item (including an ATM or Debit Card transaction), then we consider the Item an insufficient funds item. . . . *[W]ithout notice to you, we either authorize or pay the insufficient item and overdraw your account (an overdraft item) or we decline or return the insufficient item without payment (a returned item).* All types of Items, including Bank fees, may overdraw your account.

Ex. A at 24 (emphasis added).

74.    Axos's Account Agreement indicates that a singular fee can be assessed

on checks, ACH debits, and electronic payments, and clearly states that only a singular

charge or fee can be assessed, either an NSF Fee or OD Fee, per item or transaction

that is returned due to insufficient funds.

75.    The same check, ACH debit, debit card transaction or ATM withdrawal

on an account cannot conceivably become a new one each time it is rejected for

payment then reprocessed, especially when—as here—Plaintiff took no action to

resubmit them.

76.    The Fee Schedule reinforces this commonsense understanding:

> Non-sufficient/uncollected funds- Paid or Returned Item (includes checks, ACH and bill payments), ***per item***          $25.00

Ex. A at 35 (emphasis added).

77.    Based on the above, an accountholder would expect to be charged either

an NSF Fee or an OD Fee, but certainly not both, and absolutely not Multiple Fees.

78.    There is zero indication anywhere that the same item is eligible to incur

Multiple Fees.

79.    Even if Axos reprocesses an instruction for payment, it is still the same item. Axos's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

80.    The provisions referenced above never discuss a circumstance where Axos may assess Multiple Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

81.    In sum, Axos promises that one fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment.  As such, Axos breached the contract when it charged more than one fee per item.

82.    Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which Axos will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere does Axos disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Axos customers ever agree to such fees.

83.    Customers reasonably understand, based on the language of the Account Agreement, that Axos's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees.  In other words, it is always the same item.

84.    Banks and credit unions like Axos that employ this abusive practice know how to plainly and clearly disclose it.  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders— something Axos never did.

85.    For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Axos, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

86. First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

87. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**."

https://tinyurl.com/4m6aaxky (emphasis added) (last visited Sept. 17, 2021).

88. Air Academy Federal Credit Union contracts for its NSF fee as: "$32.00 **per presentment**." https://www.aafcu.com/fees.html (emphasis added) (last visited Sept. 17, 2021).

89. Community Bank, N.A. unambiguously contracts on this issue:

> **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned**.

https://tinyurl.com/4juy277p (emphasis added) (last visited Sept. 17, 2021).

90. Delta Community Credit Union contracts unambiguously as follows: "$35 **per presentment**." https://www.deltacommunitycu.com/home/fees.aspx (emphasis added) (last visited Sept. 17, 2021).

91. Further, in its Account Contract, Delta unambiguously states as follows:

The Bank reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account. **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

https://tinyurl.com/etur74we (emphasis added) (last visited Sept. 17, 2021).

92.     USE Credit Union contracts as follows:

"Overdraft/Non-sufficient Funds (NSF): Applies to checks, Bill Pay, ACH, ATM/POS and other electronic debits that are paid or returned. **Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**."

https://tinyurl.com/2uf5habu (emphasis added) (last visited Sept. 17, 2021)

93.     First Financial Bank contracts unambiguously:
Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

https://tinyurl.com/48m4x8n5 (emphasis added) (last visited Sept. 17, 2021).

94.     First Northern Credit Union unambiguously contracts its NSF in its Fee Schedule as follows: "$29.00 **per each presentment and any subsequent representment(s)**." https://tinyurl.com/6rxm94ft (emphasis added) (last visited Sept. 17, 2021).

95.     Further, First Northern in its Account Contract, unambiguously contracted its NSF Fee as of 2020 as follows:

You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**.  For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again.  If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item.  You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees**

https://tinyurl.com/328nzydc (emphasis added) (last visited Sept. 17, 2021).

96.     Glendale Federal Credit Union unambiguously contracts its NSF fee as,

"$30 **per presentment**." https://tinyurl.com/466w96wm (emphasis added) (last visited Sept. 17, 2021).

97.    Liberty Financial contracts its NSF fee unambiguously as: "$27.00 **per presentment**." https://liberty.financial/about/fee-schedule/ (emphasis added) (last visited Sept. 17, 2021).

98.    Members First Credit Union contracts unambiguously:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once…we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment**[.]

https://tinyurl.com/66vxt6cs (emphasis added) (last visited Sept. 17, 2021).

99.    Meriwest Credit Union unambiguously contracts its fee as: "$35.00/item **per presentment**". https://tinyurl.com/hs44c2hw (emphasis added) (last visited Sept. 17, 2021).

100.    Partners 1st Federal Credit Union contracts unambiguously:

Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

https://tinyurl.com/77ekhebu (emphasis added) (last visited Sept. 17, 2021)

101.    RBC Bank unambiguously contracts:

"We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**."

https://tinyurl.com/y3k56uvm (emphasis added) (last visited Sept. 17, 2021).

102.    Regions Bank contracts unambiguously:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If**

**any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

https://tinyurl.com/82s96x6v (emphasis added) (last visited Sept. 17, 2021).

103.   Tyndall Credit Union Bank contracts its NSF fee as: "\$20.00 **per presentment** (maximum 5 per day)." https://tinyurl.com/sd8kssk3 (emphasis added) (last visited Sept. 17, 2021).

104.   Axos provided no such disclosure at the time of the operative transactions, and in so doing, deceived its accountholders about its true practices.

## CLASS ALLEGATIONS

105.   Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

106.   The proposed "Classes" are defined as:

All Axos checking account holders who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the "APPSN Class").

All Axos checking account holders who, during the applicable statute of limitations, were charged were charged two or more fees ("Multiple Fees"), including NSF Fees and OD Fees on the same item (the "Multiple Fee Class").

107.   Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

108.   Excluded from the Classes are Axos, its parents, subsidiaries, affiliates, officers and directors, any entity in which Axos has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

109.   The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of customers, the identity of whom is within the

knowledge of and can be ascertained only by resort to Axos's records.

110.   The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all class members, were charged improper OD Fees on transactions that were authorized into a sufficient available balance, and Multiple Fees on the same item.  The representative Plaintiff, like all class members, has been damaged by Axos's misconduct in that they have been assessed unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Axos's misconduct is common to all class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

111.   There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual class members.

112.   Among the questions of law and fact common to the Classes are whether Axos:

    a.   Imposed OD Fees on debit card transactions when those transactions were authorized into sufficient available balances;

    b.   Imposed Multiple Fees on a single ACH debit or check;

    c.   Breached its contract and the covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its overdraft policies and practices; and

    d.   The proper method or methods by which to measure damages.

113.   Plaintiff's claims are typical of the claims of other class members, in that they arise out of the same wrongful overdraft policies and practices alleged herein. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other class member.

114.   Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.

Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

115.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Axos, no class member could afford to seek legal redress individually for the claims alleged herein.   Absent a class action, the class members will continue to suffer losses and Axos's misconduct will proceed without remedy.

116.   Even if class members themselves could afford such individual litigation, the court system could not.   Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.   Individualized litigation would also create the potential for inconsistent or contradictory rulings.   By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of the Classes)

117.   Plaintiff repeats paragraphs 1 through 88 above.

118.   Plaintiff and members of the Class and Axos have contracted for bank account deposit, checking, ATM, and debit card services, agreeing that California law applies.

119.   Axos misconstrued in the Account Agreement its true debit card processing and overdraft practices and breached the express terms of the Account Agreement.

120.   Axos breached promises included in the Agreement.

121.   No contract provision authorizes Axos to charge OD Fees on APPSN

Transactions, or Multiple Fees on the same item.

122. Therefore, Axos breached the terms of its Account Agreement by charging (a) OD Fees on transactions that were authorized into a sufficient available balance, but whose available balances were allegedly insufficient at the time the transactions were settled, and (b) Multiple Fees on the same item.

123. Under California law, every contract carries with it an implied covenant of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. The covenant requires faithfulness to an agreed common purpose and consistency with the justified expectations of the other party to a contract. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

124. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

125. Axos has breached the covenant of good faith and fair dealing in the contract through its overdraft policies and practices as alleged herein. Specifically, Axos harms consumers by exercising its contractual discretion in bad faith, even though that discretion is only vested in Axos, in a number of ways which no reasonable consumer would anticipate. Axos exercised its contractual discretion in bad faith to (a) cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions; and (b) cause accountholders to incur Multiple Fees on the same

item.

126.   Axos uses these contractual discretion points to extract OD Fees and NSF Fees on transactions that no reasonable consumer would believe could cause such fees.

127.   Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

128.   Plaintiff and members of the Classes have sustained damages as a result of Axos's breach of the contract and breach of the covenant of good faith and fair dealing.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200, *et seq.*
#### (On behalf of the Classes)

129.   Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

130.   Axos's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq.*

131.   The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.   In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

132.   By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable and sweeps within its scope acts and practices not specifically proscribed by any other law.

133.   The UCL expressly provides for injunctive relief, and also contains provisions denoting its public purpose.  A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of a UCL claim, the private litigant is entitled to recovery compensatory damages for his own benefit, but only disgorgement of profits

1   made by the defendant through unfair or deceptive practices in violation of the statutory

2   scheme or restitution to victims of the unfair competition.

3       134.   Axos's conduct violates the UCL by charging OD Fees on APPSN

4   Transactions and Multiple Fees on the same check or ACH debit.

5       135.   Axos committed fraudulent business acts and practices in violation of Cal.

6   Bus. & Prof. Code § 17200, *et seq*., in the following respect, among others:

7       •   Axos's practice of falsely indicating in account documents that OD

8           Fees will not be charged on APPSN Transactions.

9       •   Axos's practice of falsely indicating in account documents that only a

10          single NSF Fee or OD Fee will be charged on checks or ACH.

11      136.   Specifically, Axos's conduct was not motivated by any business or

12  economic need or rationale. The harm and adverse impact of Axos's imposition of OD

13  Fees on APPSN Transactions and Multiple Fees on the same item was neither

14  outweighed nor justified by any legitimate reasons, justifications, or motives.

15      137.   Plaintiff and the Classes relied on Axos's misrepresentations and

16  omissions in the publicly available account disclosures when opening and continuing

17  to use their accounts, understanding OD Fees would not be charged on APPSN

18  Transactions and Multiple Fees would not be charged on a single ACH payment or

19  check.  Had he known he would be charged such fees, he would not have used his

20  account for such transactions.

21      138.   The harm to Plaintiff and members of the Classes arising from Axos's

22  unfair practices relating to the imposition of OD Fees on APPSN Transactions and

23  Multiple Fees on the same item outweighs the utility, if any, of those practices.

24      139.   Axos's unfair business practice relating to NSF Fees and OD Fees as

25  alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable,

26  and/or substantially injurious to Plaintiff and members of the Classes.

27      140.   Axos's conduct was substantially injurious to consumers in that they have

28  been forced to pay OD Fees on APPSN Transactions and Multiple Fees on the same

item, which the contract with Axos does not promise.

141.   As a result of Axos's violations of the UCL, Plaintiff and members of the Classes have paid, and/or will continue to pay NSF Fees and/or OD Fees and thereby have suffered and will continue to suffer actual harm.

142.   In addition, Axos's conduct continues to deceive the general public. Axos's misrepresentations and omissions in its publicly available account documents and marketing materials are likely to deceive current and prospective accountholders making corresponding public injunctive relief necessary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

(a)   Declaring Axos's APPSN Transaction and Multiple Fees policies and practices to be wrongful, unfair, and a breach of contract;

(b)   Restitution of all relevant OD Fees and NSF Fees paid to Axos by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

(c)   Disgorgement of the ill-gotten gains derived by Axos from its misconduct;

(d)   Actual damages in an amount according to proof;

(e)   Statutory, punitive, and exemplary damages, as permitted by law;

(f)   Pre-judgment interest at the maximum rate permitted by applicable law;

(g)   Public injunctive relief to enjoin Axos's practice of charging APPSN Transaction OD Fees and Multiple Fees on a single ACH payment or check;

(h)   Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

(i)   Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: September 20, 2021

Respectfully submitted,

 */s/ Taras Kick*
Taras Kick (SBN 143379)
John E. Stobart (SBN 248741)
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088
Taras@Kicklawfirm.com
Stobart@Kicklawfirm.com

Jeff Ostrow (*pro hac vice* to be filed)
Jonathan M. Streisfeld (pro hac vice to be filed)
Rachel Glaser (SBN 337377)
**KOPELOWITZ OSTROW**
**FERGFUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com
glaser@kolawyers.com

***Counsel for Plaintiff and Proposed Classes***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28